UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID BENEFIEL, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
|     vs. | ) Cause No. 1:09-cv-392-WTL-DML |
| | ) |
| THE GUIDE CORPORATION HOURLY- | ) |
| RATE EMPLOYEES PENSION PLAN, et al., | ) |
| | ) |
|     Defendants. | ) |

## ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the following motions: (1) a motion filed by the GM Defendants entitled Motion of Defendants General Motors, The GM Pension Plan, and the Pension Board of Administration to Affirm the Decision of the Board of Administration under the GM Pension Plan, or in the Alternative, for Summary Judgment; (2) a motion for summary judgment filed by the Guide Defendants (the Guide Corporation Hourly-Rate Employees Pension Plan, the Guide Corporation, and the Board of Administration for the Guide Corporation Hourly-Rate Employees Pension Plan); (3) a motion for oral argument filed by the Guide Defendants; and (4) a cross-motion for summary judgment filed by the Plaintiffs. All of these motions are fully briefed, and the Court, being duly advised, **GRANTS** both of the motions for summary judgment filed by the Defendants (dkt. nos. 49 and 50); **DENIES** the Plaintiffs' cross-motion for summary judgment (dkt. no. 53); and, in light of these rulings, **DENIES AS MOOT** the Guide Defendants' motion for oral argument (dkt. no. 61).

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

The Plaintiffs argue that the Defendants failed to comply with Local Rule 56.1 because they failed to provide specific citations to the evidence they rely upon for their factual assertions. The Court finds that overall the Defendants adequately directed the Court to the specific evidence of record that was relevant to each asserted fact. In fact, the compilations of deposition testimony relevant to particular issues prepared by the Guide Defendants were a very efficient means of aiding the Court in reviewing the evidence. That said, the Plaintiffs correctly point to several of the Defendants' exhibits that were not properly supported by affidavit; those exhibits have not been considered by the Court in its ruling.

**BACKGROUND**

Each of the sixteen Plaintiffs[1] were hired by the General Motors Corporation ("GM") between 1966 and 1977 to work at the GM facilities known as the Delphi Interior and Lighting Systems, which were located in Monroe, Louisiana and Anderson, Indiana (hereinafter referred to as the "Delphi Plants"). At the time of their hire, the Plaintiffs were hourly employees represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). As such, they participated in the collectively bargained GM Hourly-Rate Employees Pension Plan ("GM Hourly Plan"). The GM Hourly Plan was a defined benefit plan pursuant to which an employee was entitled to a monthly pension benefit upon his or her retirement. The amount of the monthly benefit was calculated based upon the number of years of "credited service" accrued by the employee.

At various times during his employment with GM, each Plaintiff transferred from his hourly position to a salaried position with GM. Upon transferring to a salaried position, each Plaintiff no longer participated in the GM Hourly Plan, but rather began to participate in the GM Retirement Program for Salaried Employees ("GM Salaried Plan"), which was also a defined benefit plan. Under the terms of the GM Salaried Plan, each Plaintiff's years of credited service earned under the GM Hourly Plan were transferred to the GM Salaried Plan, and the Plaintiffs continued to accrue years of credited service under the GM Salaried Plan.

In late 1998, GM sold the Delphi Interior and Lighting Systems operations, where each of the Plaintiffs was still employed, to the Guide Corporation ("Guide"). Upon the sale of the

---

[1]There were originally eighteen Plaintiffs, but Plaintiffs Connie Reding and Terry Richardson were dismissed from this suit with prejudice at their request.

lighting operations to Guide, the Plaintiffs became salaried employees of Guide. As a result of their employment with Guide, the Plaintiffs became participants in the Guide Corporation Retirement Savings Plan for Salaried Employees ("Guide Salaried Plan"). Unlike the GM Salaried Plan, the Guide Salaried Plan was not a defined benefit plan, but rather was a defined contribution money purchase pension plan. Under this type of plan, the amount of retirement benefits received by an employee upon retirement depends on the accumulated amount of contributions made to the employee's account by both the employee and the employer, rather than being based on the number of years of credited service at retirement as is the case under a defined benefit plan. As salaried Guide employees, the Plaintiffs also were entitled to participate in the Guide Corporation Salaried 401(k) Savings Plan ("Guide 401(k) Plan"), which was also a defined contribution money purchase pension plan.

Effective January 1, 1999, a newly-formed corporation called the Delphi Automotive Systems Corporation ("Delphi") was formed by GM and the pension obligations of the GM Salaried Plan for the Plaintiffs and other salaried employees who had worked for GM's Delphi Division were assumed by the Delphi Automotive Systems Corporation Retirement Program for Salaried Employees ("Delphi Salaried Plan"), which was identical in all material respects to the GM Salaried Plan. At that point, then, the years of credited service that the Plaintiffs had accrued while working for GM were transferred to the Delphi Salaried Plan.

All of the Plaintiffs continued to work for Guide at the Delphi Plants until those plants were closed by Guide in early 2007. Fifteen of the Plaintiffs transferred from their Guide salaried positions to Guide hourly positions in late 2006 or early 2007; the remaining Plaintiff, Philip Prophet, had already transferred to an hourly position at Guide in 2001. As Guide hourly

employees, each Plaintiff was again represented by the UAW, and each became a participant in the Guide Corporation Hourly-Rate Employees Pension Plan ("Guide Hourly Plan"). The Guide Hourly Plan was a defined benefit plan.

In conjunction with the 2007 plant closings, Guide, GM, and the UAW entered into a Memorandum of Understanding ("MOU") pursuant to which those Guide employees represented by the UAW would be presented with several retirement options through a Special Attrition Program ("SAP"). Each of the SAP options was presented to the employees through a power point presentation that was made at a general meeting on January 25, 2007. Representatives from UAW, GM, and Guide were present at the meeting to answer any questions that the employees might have regarding their options. Each of the Plaintiffs chose either Option 1 (Normal or Voluntary Retirement) or Option 3 (Pre-Retirement Program). Option 1 read:

> Retire effective first of the month following the month my services are no longer required but no later than March 20, 2009, under the Normal or Voluntary provisions of the [Guide Hourly Plan]. I understand that under this Option I will also receive a Thirty-Five Thousand Dollar ($35,000) cash payment, less applicable taxes.

Option 3, which was described as providing the means to "grow into 30 and out retirement," read:

> Accept the Pre-retirement Program effective no later than March 20, 2009. While on the Pre-retirement Program, I understand that I will receive gross monthly pay as follows:
>
> | Years of Credited Service | Monthly Gross Pay |
> |---|---|
> | 29 | $2,900 |
> | 28 | $2,850 |
> | 27 | $2,800 |
> | 26 | $2,750 |
>
> I further understand that I must retire the first of the month following the month

> that I attain 30 years of credited service under the 30 and out provisions of the [Guide Hourly Plan] or the Pension Plan in effect at the date of my retirement without any additional incentive. I understand that wages will be paid weekly on an hourly basis (2,080 hours per year) and will remain at that rate until 30 years of credited service is accrued. . . .

The Plaintiffs believed that by choosing these options they would be receiving upon their retirement the full monthly pension benefit provided for by the Guide Hourly Plan for those employees who retired with thirty years of credited service, which at the time was $3020.00 (hereinafter referred to as the "Full Monthly Benefit"). However, after they made their choices they were informed that they would actually receive from the Guide Hourly Plan a much smaller monthly benefit calculated only on the short time they had been participants in the Guide Hourly Plan. They also received a monthly pension from the Delphi Salaried Plan based upon the years that they worked for GM and Delphi prior to the sale of Delphi to Guide, as well as the payments to which they were entitled based upon the balances in their Guide Salary Plan and the Guide 401(k) Plan. The Plaintiffs appealed the amount of their Guide Hourly Plan benefit pursuant to the applicable appeal provision.[2] After their appeals were denied, this litigation ensued.

## DISCUSSION

The Plaintiffs' Complaint contains four counts. Three of them–breach of contract, breach of fiduciary duty, and breach of pension benefit payments–all assert that the Defendants were contractually obligated to pay the Plaintiffs the full monthly pension benefit to which they believe they are entitled. The fourth, entitled "equitable estoppel/detrimental reliance," asserts that the Plaintiffs relied upon false and misleading statements made by the Defendants regarding

---

[2]By the time their appeals were addressed, the Guide Hourly Plan had been merged into the GM Hourly Plan. Accordingly, the decision denying the Plaintiffs' appeals was made by the GM Hourly Plan.

their pension benefits. These claims are addressed, in turn, below.

***Are the Defendants[3] Contractually Obligated to Pay the Plaintiffs the Full Monthly Benefit?***

While the Plaintiffs' Complaint does not reference the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), there is no dispute that the Plaintiffs are seeking to recover benefits they believe they are owed under the Guide Hourly Plan, which is (also indisputably) an employee benefit plan governed by ERISA. Therefore the Plaintiffs' claim for benefits must be analyzed as one brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). There is a dispute among the parties regarding the standard of review that applies to the Plaintiffs' claims. "Absent clear language to the contrary, plans are read to provide for searching judicial review of benefits determinations: plenary review of the administrator's interpretation of the facts and plan." *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 485 (7th Cir. 2007) (citations omitted). The Defendants argue that the more restrictive arbitrary and capricious standard of review applies to the Plaintiffs' claims pursuant to the terms of the Guide Hourly Plan. The Court need not resolve the issue, however, because the result is the same under either standard in this case. Accordingly, the Court will assume, without deciding, that the *de novo* standard of review urged by the Plaintiffs applies in this case.

As noted by the Seventh Circuit in *Krolnik v. Prudential Ins. Co. of America*, 570 F.3d 841, 843 (7th Cir. 2009), the use of the term *de novo* review in this context is somewhat misleading. "[L]itigation under ERISA by plan participants seeking benefits should be conducted just like contract litigation, for the plan and any insurance policy are contracts." *Id.*

---

[3] Because the Court finds that none of the Defendants are liable to the Plaintiffs, it is unnecessary to distinguish between them and their various roles in determining and paying the Plaintiffs' pension benefits.

Therefore, just as in any other contract case, rather than "reviewing" the Defendants' decision regarding the Plaintiffs' pension benefits, the Court actually must make an independent decision regarding the application of the relevant contractual provisions to the facts of record. Accordingly, the Court must analyze the applicable contractual provisions and determine whether the Plaintiffs are entitled to the Full Monthly Benefit as they claim. In doing so, the Court is mindful of the following principles:

> [T]he primary purpose of contract interpretation is to give effect to the objective intent of the parties. By intent we mean the scope and purpose of the document as manifest by the language used. . . . We will not bend the language of a contract to create an ambiguity when none exists, but neither will we follow a literal interpretation when to do so would lead to an unreasonable or absurd result.

*In re Airadigm Communications, Inc.*, 616 F.3d 642, 664 (7th Cir. 2010) (citations and internal quotation marks omitted).

Boiled down to its essence, the Plaintiffs' contract argument is as follows:

- the Guide Hourly Plan required them to have thirty years of credited service to retire;
- they were permitted to retire (or, for those who chose Option 3, to "grow into" retirement);
- therefore, they must have had thirty years of credited service; and
- those with thirty years of credited service are entitled to the Full Monthly Benefit under the Guide Hourly Plan.

While this argument has a certain logical appeal, it does not find support in the relevant documents. Rather, the powerpoint presentation in which the SAP was explained contains the following slide:

> Q: If I retire from Guide, will I have a GM pension or a Guide pension?
>
> A: You will receive your healthcare from GM and a portion of your pension will be paid by the Guide pension plan based upon your years of credited service with Guide and a portion of your pension will [be] paid by GM based upon the years of credited service that you had accumulated within the GM pension plan.

This slide makes it clear that the SAP did not obligate the Guide Hourly Plan to pay the Full Monthly Benefit to those who retired under it; rather, the Guide Hourly Plan was going to pay only those benefits due an employee based upon the years of credited service that the employee had with Guide. Inasmuch as Guide had not existed for thirty years at the time the Delphi Plants were closed, no one subject to the SAP would have had thirty years of credited service with Guide. Therefore, if thirty years of credited service *with Guide* were required to qualify for retirement, no one would be qualified to choose Option 1 under the SAP.[4] This fact supports the Defendants' position that while pursuant to the SAP thirty years of combined credited service was sufficient to qualify for retirement, and therefore Option 1, the Guide Hourly Plan was only going to pay benefits based upon an employee's years of credited service with Guide. This interpretation is entirely consistent with the Guide Hourly Plan's definition of credited service, which is calculated "on the basis of total hours compensated by any plant of Division of the Corporation," which is, in turn, defined as Guide Corporation. This interpretation also avoids the absurd result urged by the Plaintiffs–that they would receive a pension from the Delphi Plan for the years they worked for GM prior to the Delphi Plants being sold to Guide, and then have those same years counted in calculating their pension from the Guide Hourly Plan, as well as the years they worked as salaried Guide employees, in essence receiving double retirement benefits

---

[4]The same is true with regard to Option 3, as Guide also had not existed for 26 years at the time of the plant closings.

for all of those years.

The Plaintiffs point to the following provision in the Guide Hourly Plan in support of their position that the years they worked under the Guide Salary Plan should be counted as years of credited service for purposes of calculating their benefits under the Guide Hourly Plan:

> Any salaried employee transferred to a hourly-rate job who thereby becomes an employee covered by the Plan shall have credited to the nearest 1/10 year any credited service the employee had as of the date of such transfer under any [Guide] Corporation retirement plan for salaried employees.

This provision is of no help to the Plaintiffs, however, because they did not accrue any "credited service" under the Guide Salary Plan. The Guide Salary Plan does not use credited service for the calculation of benefits and contains no provision for the accrual of credited service by employees subject to the plan; rather, it uses "years of service" for vesting and other purposes. In fact, the term "credited service" is only used once in the Guide Salary Plan, in the following provision:

> "Years of Service" means the aggregate Periods of Service of an Employee whether or not such Periods of Service are completed consecutively. For Salaried Transferred Employees, Credited Service as determined under the General Motors Retirement Program for Salaried Employees and the General Motors Hourly Pension Plan as of the date the individual terminates employment with General Motors shall be included in Years of Service, unless specifically excluded elsewhere in the Plan.

This provision makes it clear that under the Guide Salary Plan "years of service" and "credited service" are not synonymous. The Plaintiffs received credit for their "credited service" at GM for purposes of calculating their "years of service" under the Guide Salary Plan, but there was no transfer or accrual of credited service to the Guide Salary Plan, and therefore the Plaintiffs had no credited service under the Guide Salary Plan that could be credited to them under the above-quoted provision of the Guide Hourly Plan.

There is simply nothing in any of the written documents pointed to by the Plaintiffs that obligates the Guide Hourly Plan to pay the Plaintiffs pension benefits for time that they did not work as Guide hourly employees. Accordingly, the Defendants are entitled to summary judgment on the Plaintiffs' claim that the Defendants are contractually liable to pay them the Full Monthly Benefit. In light of this ruling, the Defendants also are entitled to summary judgment with regard to the Plaintiffs' breach of fiduciary duty claim, inasmuch as that claim is based upon the Plaintiffs' assertion that the Defendants breached their duty "to correctly administer the plan and issue a correct decision on the benefits appeal."[5]

### *Equitable Estoppel/Detrimental Reliance*

As an alternative to their contract-based claims, the Plaintiffs also assert a claim for equitable estoppel. "'The elements of ERISA-estoppel are: (1) a knowing misrepresentation by the defendant; (2) in writing; (3) with reasonable reliance by the plaintiff on the misrepresentation; (4) to the plaintiff's detriment.'" *UAW v. Rockford Powertrain, Inc.*, 350 F.3d 698, 705 (7th Cir. 2003) (quoting *Kamler v. H/N Telecom. Servs., Inc.*, 305 F.3d 672, 679 (7th Cir.2002)). The Court is less than convinced that the Plaintiffs have demonstrated any knowing misrepresentation by the Defendants; at most the Plaintiffs have shown that the use of the term "credited service" in conjunction with describing eligibility to retire under the SAP was confusing. Even assuming that the Plaintiffs could satisfy that element, however, it is clear that their equitable estoppel claim must fail, because they have not demonstrated that they relied

---

[5]The Plaintiffs also allege that the Defendants breached their duty to act in a timely manner with regard to their appeal; however, in light of the fact that the appeal ultimately was correctly decided against them, it does not appear that the Plaintiffs suffered any compensable injury from the alleged delay.

upon any misrepresentation to their detriment. None of the Plaintiffs claims that he would have acted any differently if he had known that he would not receive the Full Monthly Benefit. Even given the actual monthly benefits the Plaintiffs are now receiving, the evidence of record indicates that the SAP option chosen by each Plaintiff was the most attractive option for him, primarily because it allowed him to retain health benefits in retirement. The Plaintiffs argue that that fact is irrelevant "as it is clear the Plaintiffs relied on the misrepresentations in voting to ratify the [Plant Closing Agreement]." However, the Plaintiffs have not demonstrated (or even attempted to demonstrate) that the Plant Closing Agreement would not have been ratified if their "yes" votes had been changed to "no," or even that they would have voted no if they had been aware of the actual pension benefits they would have received.[6] Accordingly, the Defendants are entitled to summary judgment on the Plaintiffs' equitable estoppel claim as well.

## CONCLUSION

For the reasons set forth above, the Defendants' motions for summary judgment are **GRANTED** and the Plaintiffs' cross-motion for summary judgment is **DENIED**.

SO ORDERED: 12/20/2010

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[6]The Plaintiffs also suggest that those Plaintiffs who chose Option 1 would have instead chosen Option 3 in order to receive several years of pay while they "grew into" retirement. This ignores the fact those Plaintiffs who were eligible for Option 1 (that is, eligible to retire based on their total years of service) were not eligible for Option 3.

Copies to all counsel of record via electronic notification